UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

HUASCAR BENOIT,

                                    Plaintiff,    **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

          -against-

THE CITY OF NEW YORK, JOHN DOES #1-4
                              Defendants.

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 USC §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from a May 31, 2021 incident, in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to assault, battery, excessive force, and false arrest.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

5. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Southern District of New York.

## NOTICE OF CLAIM

6. Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## PARTIES

7. Plaintiff Huascar Benoit is a resident of New York County in the State of New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. John Does #1-4 are individual NYPD officers involved in the assault and detention of Plaintiff whose names are not presently in Plaintiff's possession. John Does #1-4 were at all relevant times police officers of the NYPD, and as such were acting in the capacity of agent, servant and employee of the City of New York. On information and belief, defendants John Does #1-4 were involved in the illegal arrest and prosecution of Plaintiff, the assault/battery committed against Plaintiff and/or failed to intervene in the actions of their fellow officers. Defendants John Does #1-4 are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of

New York.

**FACTUAL ALLEGATIONS**

11. On the night of May 30, 2020, continuing into the early morning of May 31, 2020 Plaintiff was participating in a lawful protest related to the death of George Floyd, and more generally police accountability. This protest was part of the large number of "Racial Justice Protests" occurring in New York City and around the Country in the days and weeks following the death of George Floyd.

12. Plaintiff joined a group of protesters outside his home in Manhattan, and marched for several hours.

13. Just after midnight in the morning of May 31, 2020 Plaintiff was with protesters in Brooklyn, near the intersection of Dekalb Avenue and Flatbush Avenue.

14. Police officers directed Plaintiff and other protesters in the area to move onto and/or remain on the sidewalk.

15. Plaintiff complied with the direction to position himself on the sidewalk.

16. Plaintiff observed an NYPD officer use force on another protester.

17. Plaintiff took out his cell phone and began to record the officers' conduct.

18. Immediately after Plaintiff began recording John Does #1-4 charged at Plaintiff.

19. Defendants pushed Plaintiff backwards.

20. One of the defendants struck Plaintiff in the face with an NYPD issued baton.

21. Plaintiff fell to the ground.

22. While Plaintiff was on the ground, defendants struck him with their batons.

23. While Plaintiff was on the ground, defendants struck him with their bodies including punches and/or kicks.

24. Chemical spray was used on Plaintiff by defendants.

25. Plaintiff had not committed any crime, nor did defendants have probable cause or reasonable suspicion to believe that any crime had been committed.

26. Plaintiff did not resist or attempt to resist the officers.

27. Plaintiff did not strike nor attempt to strike any officer.

28. Plaintiff was briefly detained at the scene of the incident.

29. Plaintiff was allowed to leave the area.

30. No criminal charges were ever filed against Plaintiff.

31. Plaintiff suffered severe injuries as a result of the force used by defendants, including fractures to his orbital wall, and maxillary sinus.

## DAMAGES

32. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

   b. Violation of his rights to freedom of speech and assembly, pursuant to the First and Fourteenth Amendments to the United States Constitution;

   c. Emotional trauma and suffering, including fear, depression, embarrassment, anger, humiliation, frustration, extreme emotional distress, extreme inconvenience, anxiety, and other forms of mental distress;

   d. Physical injuries including fractures to the orbital wall and maxillary sinus;

   e. physical pain and suffering.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – as to Individual Defendants)

33. The above paragraphs are here incorporated by reference.

34. John Does #1-4 have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC § 1983.

35. Defendants' conduct deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiff of his right to freedom of speech and assembly, pursuant to the First Amendment of the United States Constitution.

36. Defendant used excessive force against plaintiff.

37. Defendants seized Plaintiff without probable cause.

38. Defendants prevented Plaintiff from exercising his rights to speech and assembly.

39. Plaintiff was damaged as a result of defendant's wrongful acts.

## SECOND CAUSE OF ACTION
(Assault – as to Individual Defendants)

40. The above paragraphs are here incorporated by reference.

41. Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

42. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and are liable to plaintiff under common law, and the laws and Constitution of New York State.

43. Plaintiff was damaged by defendant's assault.

## THIRD CAUSE OF ACTION
(Battery – as to Individual Defendants)

44. The above paragraphs are here incorporated by reference.

5

45. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

46. Defendants deprived plaintiff of his civil, constitutional and statutory rights and are liable to plaintiff under common law, and the New York State Constitution.

47. Plaintiff was damaged by defendants' battery.

## FOURTH CAUSE OF ACTION
(False Arrest)

48. The above paragraphs are here incorporated by reference.

49. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

50. Defendants intended to confine plaintiff and in fact confined him.

51. Plaintiff was conscious of the confinement and did not consent to it.

52. The confinement was not privileged.

53. Plaintiff was damaged by his false arrest

## FIFTH CAUSE OF ACTION
(Respondeat Superior – As to City of New York)

54. The above paragraphs are here incorporated by reference.

55. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

56. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

57. The City of New York is responsible for the tortious conduct of its employees in this matter by reason of *respondeat superior*.

## SIXTH CAUSE OF ACTION
(Municipal Liability – As to City of New York)

58. The above paragraphs are here incorporated by reference.

59. The City of New York is liable for the damages suffered by Plaintiff as a result of the conduct of its employees, agents, and servants, in that the City has created policies or customs under which unconstitutional practices routinely occur and allowed such policies or customs to continue.

60. The NYPD's unconstitutional response to the 2020 Racial Justice Protests is part of its long history of aggressively policing protests.

61. Following a 2003 anti-war protest, an investigation by the New York Civil Liberties Union (NYCLU) documented 198 accounts of excessive force by NYPD Officers, including the use of horses and batons to disperse crowds as well as indiscriminate pepper spraying. This investigation also documented the use of crowd control tactics such as physically preventing demonstrators from reaching their rally location, herding protesters into pens fashioned from metal barricades, and mass arrests.

62. NYCLU documented similar unconstitutional practices at protests of the 2004 Republican National Convention ("RNC"). NYCLU received over 200 complaints from witnesses at the RNC protests and published a report finding that the NYPD "severely undermined" protesters' rights in part through, inter alia, "mass arrests of hundreds of peaceful demonstrators and bystanders" and "the pervasive surveillance of lawful demonstrators."

63. In 2006, the Civilian Complaint Review Board ("CCRB"), an independent NYPD oversight agency, published its own findings regarding the RNC protests following an investigation of 63 complaints. The Board found that then-Deputy Chief Monahan and another deputy chief failed to make their orders to disperse sufficiently audible, understandable, or with

7

enough time to allow protesters to leave before effecting arrests, resulting in the mass arrest of nearly 250 protesters.

64. Following large-scale demonstrations in downtown Manhattan in 2011, known as the "Occupy Wall Street" protests, the Protest and Assembly Rights Project issued a 2012 report detailing 130 complaints of excessive or unnecessary force against protesters, bystanders, lawyers, legal observers, and journalists. These claims included over a dozen instances where officers interfered with independent monitoring by journalists and legal observers by threatening to or in fact arresting them, and the repeated use of kettling against peaceful protesters, which "inflamed tensions," "caused confusion and panic," and "chilled ongoing and future protest activity."

65. Numerous lawsuits were filed against the NYPD following the 2003 anti-war protest, 2004 RNC protests, and 2011 Occupy Wall Street protests. These suits alleged, inter alia, that the NYPD: used unnecessary and excessive force against peaceful protesters, bystanders, legal observers, and journalists; unjustifiably detained and kettled protesters; effected unlawful and mass arrests without probable cause; and suppressed protected First Amendment activities.

66. In October 2015, the NYPD Office of the Inspector General (NYPD-OIG) issued a report assessing the NYPD's use of force, finding that its "use-of-force policy was vague and imprecise, providing little guidance to individual officers on what actions constitute force and providing insufficient instruction on de-escalation"; that the "NYPD's training programs did not adequately focus on de-escalation"; and that the "NYPD frequently failed to impose discipline even when provided with evidence of excessive force."

67. Between 2013 and 2019, the CCRB substantiated numerous complaints that NYPD Officers used excessive force in violation of NYPD's use of force policy, including: 30 allegations involving pepper spray; 17 involving batons; 38 involving body strikes or physical force; and 10

involving hits against an inanimate object. In total, the CCRB substantiated 471 allegations of excessive force during this period against NYPD Officers who were still employed with the agency as of June 2020. Since 2003, the CCRB substantiated 730 excessive force allegations against NYPD Officers who were still employed with the agency as of June 2020.

68. Despite repeated notice about the NYPD's shortcomings in lawfully managing protests and the NYPD-OIG's own report on training deficiencies in connection with the use of force, the City's recent conduct demonstrates that it failed to correct these practices and adequately train its officers on constitutional policing during a protest. Consequently, the NYPD continued to fail New York Residents by responding to the Protests unlawfully.

69. Prior to and during the Protests, Defendants failed to adequately train, supervise, and discipline NYPD Officers to prevent the violation of protestors' constitutional rights.

70. Despite public reports, lawsuits, and other complaints about the NYPD's conduct in policing protests since 2003, the NYPD failed to provide adequate training to officers on constitutional policing in this context and failed to develop relevant policies to ensure that the unlawful conduct observed during prior protests ceased.

71. As the NYC-DOI concluded in a recent report, prior to the Protests, the NYPD lacked standardized, agency-wide, in-service training related to policing protests.

72. Further, as a December 2020 report by the NYC Corporation Counsel uncovered, the NYPD failed to conduct "any protest-related after action-review" between at least the 2004 RNC protests and the 2020 Protests.

73. Additionally, as the NYC-DOI concluded, the NYPD's Patrol Guide does not include a specific policy on policing protests or safeguarding peaceful assemblies that would direct officers on how to conduct themselves under these circumstances.

74. NYPD leadership admitted that it failed to prepare NYPD Officers for the Protests. Chief Monahan knew that "[a] lot of cops had not received disorder trainings since they first came on the job."

75. Defendants knew that NYPD Officers would confront demonstrations protesting police brutality, that NYPD Officers have previously mishandled such demonstrations using excessive force and arrests lacking probable cause, and that without intervention or sufficient training, NYPD Officers would again rely on similar tactics. Nevertheless, Defendants knowingly deployed thousands of insufficiently trained NYPD Officers to police the Protests.

76. This failure predictably led to constitutional violations. As NYPD's Chief of Patrol in October 2020 stated about the Protests: "[i]f [the officers] [saw] something that they perceived to be a violation of the law, they arrested that person, not realizing that protests are allowed—that peaceful protests are allowed." She further admitted that "we had officers that did things that never should have been done; that's not in alignment with what we stand for as agency."

77. Further compounding the error of deploying thousands of inadequately trained officers, Defendants also deployed officers from the Strategic Response Group ("SRG") to respond to the protests. SRG is a specialized unit trained to respond to major disorder control events, such as riots, and engage in counter-terrorism efforts.

78. SRG officers are trained to use crowd control techniques and strategies, such as kettling, mass arrests, and the deployment of bicycle squads to perform disorder control. SRG routinely relied on these tactics when responding to the peaceful Protests.

79. As the Protests unfolded, Defendants also knew about, but allowed, the unlawful practices to continue.

80. On information and belief, City officials including Mayor de Blasio and Commissioner Shea received regular reports from Chief Monahan and other NYPD officials responsible for implementing the City's response to the Protests. On information and belief, Mayor de Blasio, Commissioner Shea, and Chief Monahan regularly reviewed media reports documenting patterns of police misconduct, including excessive force, unlawful seizures and other First-Amendment violations, in response to the Protests. Throughout the Protests, the Mayor and police leadership, on information and belief, were aware of persistent NYPD actions to violently suppress the Protests through media reports; the CCRB's public hearing; reports from staff, including the NYPD Internal Affairs Bureau and the Mayor's Community Affairs Unit; regular interactions with other NYPD leaders; and testimony collected, and a report published, by the OAG.

81. Despite their awareness of these practices, the Mayor, Commissioner Shea, Chief Monahan, and NYPD borough commanders who were delegated final decision-making authority deliberately failed to prevent NYPD Officers from using these tactics. Upon information and belief, they also failed to discipline all NYPD Officers who engaged in misconduct during the Protests.

82. Their inaction to address these patterns constitute a City policy or custom to engage in excessive force, unlawfully seize protest attendees, and suppress First Amendment-protected activities by using such tactics at protests and retaliating against people engaged in their constitutionally protected rights to protest and observe and report police activity.

83. The NYC-DOI's December 2020 report found that the "NYPD's use of force on protesters—encirclement (commonly called 'kettling'), mass arrests, baton and pepper spray use, and other tactics—reflected a failure to calibrate an appropriate balance between valid public safety or officer safety interests and the rights of protesters to assemble and express their views."

The result was a pattern of excessive force and abuse of authority, which the NYC-DOI attributed to the NYPD's "errors or omissions."

84. In a December 18, 2020 video statement posted on social media, Mayor de Blasio acknowledged that he "agree[d] with [the NYC-DOI's] analysis" and with its recommendations. He confirmed that Commissioner Shea also agreed. He further admitted that "there were things that happened that were not about whether someone made the individual mistake, there were choices made, strategic choices, that weren't good choices it turns out; that end up causing problems. And we have to come to grips with that. We have to train our police force differently."

85. NYPD Officers continued the NYPD's practice of using excessive force against peaceful protesters at the 2020 Protests, including the protest Plaintiff was engaged in.

86. NYPD Officers applied excessive force in myriad ways at the Protests, including with batons, bicycles, Oleoresin Capsicum (O.C.) spray (also known as pepper spray), body strikes, overly tight zip-ties, cars, and Tasers.

87. Such excessive force complaints formed the majority of the 1,646 allegations of police misconduct occurring between May 28 and June 20, 2020 that were reported to the CCRB.

88. NYPD Officers repeatedly violated New York Residents' constitutional rights and applicable NYPD policies regarding the use of force by using force against non-resisting or passively resisting individuals.

89. The City knew or should have known that NYPD Officers had a practice of using unconstitutionally excessive force to control and disperse protests yet did not enforce its policies to end that practice.

90. Upon information and belief, City officials have not disciplined the vast majority of NYPD Officers who used excessive force against Protest attendees.

91. Throughout the Protests, NYPD Officers engaged in a pattern of indiscriminately striking protesters using blunt instruments, including batons and bicycles, without provocation or justification. At times, NYPD Officers, aiming batons at protesters' heads, struck with potentially deadly force.

92. The NYPD's Use of Force Policy, Patrol Guide Procedure Number 221-02, provides that police officers must, prior to using force, attempt to de-escalate, meaning to "stabilize the situation and reduce the immediacy of the threat . . . to reduce or eliminate the necessity to use force."

93. The policy further instructs NYPD Officers to "advise the offender that physical force or other devices (e.g., O.C. pepper spray, shield, baton/asp, etc.) will be used to handcuff/restrain him/her before applying such force, if appropriate" and if de-escalation efforts fail.

94. The NYPD Use of Force Policy prohibits use of batons on persons who are "passively resisting," such as failing to comply with a lawful command.

95. At least 50 times during the Protests, in violation of the NYPD Use of Force Policy and constitutional protections, NYPD Officers indiscriminately and unreasonably struck protesters with blunt instruments without provocation or justification.

96. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that the City has created a policy or custom under which unconstitutional practices with regards to protest attendees has routinely occurred. City has allowed such policies or customs to continue. The City has been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has created the dangerous situation which led to the violation of plaintiff's rights by deploying officers in manner which the City knew or should have known was likely to lead to violations of the rights of protesters.

97. Plaintiff has been damaged by the City's policy or custom which led to his injuries.

WHEREFORE, plaintiff demand judgments against the defendants, jointly and severally, as follows:

  A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

  B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

  C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

  D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: May 17, 2021
     New York, New York    Respectfully yours,

*[signature]*

By: Nicholas Mindicino, Esq.
Liakas Law, P.C.
65 Broadway, 13th Floor
New York NY 10006
212-937-7765